IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 22, 2005

## STATE OF TENNESSEE v. WILLIE J. SIMMONS

**Appeal from the Circuit Court for Rutherford County**
**No. F-54862     James K. Clayton, Jr., Judge**

_____

**No. M2005-00556-CCA-R3-CD - Filed January 24, 2006**

_____

The Defendant, Willie J. Simmons, was convicted of rape and sexual battery. The Defendant received an effective eight year sentence in the Department of Correction. On appeal, the Defendant argues that the trial court erred in denying alternative sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Jeffery S. Burton, Murfreesboro, Tennessee, for the appellant, Willie J. Simmons.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; and William C. Whitesell, Jr., District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On December 1, 2003, the Defendant was indicted on one count of rape and one count of sexual battery. On April 14, 2004, a jury convicted the Defendant of both charges. Following a sentencing hearing on November 30, 2004, the trial court sentenced the Defendant to concurrent terms of eight years and one year, respectively. The trial court denied the Defendant's motion for new trial on February 17, 2005, and the Defendant timely filed his notice of appeal. The Defendant presents one issue for review, that is, did the trial court err in denying his request for probation.

On the evening of August 9, 2003, Justin Beckwith, the victim's live-in boyfriend, invited the Defendant and his friend, Monricus Patton, to join Beckwith, the victim and three of his friends

at their apartment to watch movies, play dominoes and drink beer. At the time, the Defendant was thirty-eight years old and the victim and Beckwith were college students approximately twenty years old. The Defendant had been acquainted with Beckwith for about four or five months, and he had met the victim on several occasions. The Defendant also helped Beckwith and the victim move into their apartment and had been there several other times to help with home improvement projects. Beckwith "passed out" on the couch around midnight on the night in question. Two of Beckwith's friends had already gone home. Some time later, the victim retired to her bedroom for the night. Thereafter, the Defendant drove Patton home. The Defendant returned to the apartment and drove the third friend to his car. The Defendant then went back to the victim's apartment sometime after midnight.

When the Defendant returned to the apartment, he noticed Beckwith still asleep on the couch. The Defendant finished watching a movie. When the movie was over, the Defendant said he attempted to awake Beckwith so he could lock the front door after the Defendant exited. The Defendant was unsuccessful in his attempts so he went upstairs to the victim's bedroom. The Defendant testified that he "figured while [Beckwith] was down there asleep, I could get – try to get her hot. . . . Maybe she would have gave in without [Beckwith] knowing anything. . . . [S]he didn't give me no indication. It was something I came up with because we had been drinking." The Defendant started "rubbing" the victim's body under her panties. The victim awoke to find the Defendant standing next to her bed with his hand between her legs and his finger inserted in her vagina. "I asked him what he was doing, and he started talking about how he wanted me to come downstairs and lock the door . . . I yelled at him. I told him to get the hell out. . . . He kept saying, don't be mad. I just came upstairs because I wanted you to lock the door." The Defendant left the apartment immediately after the victim yelled at him to leave.

When questioned by the police during the early morning hours of August 10, 2003, the Defendant initially denied going upstairs and into the victim's bedroom. He also denied touching the victim. However, upon further questioning, the Defendant admitted touching the victim and inserting his finger inside the victim's vagina. The Defendant initially denied any wrongdoing, saying that it was an accident and he was simply trying to awaken the victim.

Melissa Crim, a counselor who performs sexual offender evaluations, testified on behalf of the State at the sentencing hearing. The Defendant was scheduled to meet with Ms. Crim in order to complete an evaluation before the sentencing hearing. The first scheduled appointment was May 11, 2004, but the Defendant failed to appear. A second meeting was set for May 18, 2004. The Defendant appeared and filled out some paperwork, but according to Ms. Crim, did not complete all of the required testing. The Defendant informed Ms. Crim that he could not stay long because he had to visit someone in the hospital. Apparently there was some confusion about Ms. Crim's payment, and Ms. Crim cancelled an appointment scheduled for June 25, 2004. On June 21, 2004, the trial court signed an order authorizing the State to pay for the evaluation. Thereafter, another appointment was scheduled for August 24, 2004, but the Defendant telephoned Ms. Crim and informed her he was working and unable to attend. He also mentioned that he would not be able to pay for his portion of the bill. The Defendant was subsequently taken into custody and the court-

ordered evaluation eventually took place in jail on October 29, 2004. Ms. Crim met with the Defendant for several hours that day.

During the evaluation, the Defendant told Ms. Crim that he "touched the top of [the victim's] private" but he denied inserting his finger into the victim's vagina. In her written evaluation, which is included in the pre-sentence report, Ms. Crim noted that the Defendant "blamed much of it on drinking, but was able to accept some responsibility for his actions." The Defendant claimed the victim was lying about the insertion of his finger. Ms. Crim, however, was not aware the Defendant already testified at trial that he inserted his finger into the victim's vagina. If she had known this, Ms. Crim stated, "it would have made a big difference" and she would have further pursued her line of questioning with the Defendant. Ms. Crim opined, based upon her evaluation, that the Defendant was a moderate risk to re-offend.

John Parker, a probation officer assigned to work solely with probationers convicted of sex crimes, testified during the sentencing hearing about the State's probation directives for sex offenders. Mr. Parker, after conducting a home visit, determined that the Defendant's residence did not satisfy several of the restrictions placed upon these type of probationers. According to Mr. Parker, if granted probation, the Defendant would be required to find suitable alternative housing.

The victim in this case testified at trial and again during the sentencing hearing. She stated during the sentencing hearing that the Defendant was her boyfriend's friend and that she did not consider the Defendant an acquaintance of hers. The victim testified that she only drank about three beers throughout the day on the date of the crimes in this case. The victim also testified that, as a result of the crimes, she has become more paranoid and distrustful of people. She also stated that her relationship with her boyfriend is "still not the same;" she "kind of sort of blames" her boyfriend for bringing the Defendant into their home. The victim further testified that she did not receive any physical injuries or medical treatment as a result of the attack, and testified that she has not sought counseling.

The Defendant also testified at trial and again during the sentencing hearing. If granted probation by the court, he stated he could find suitable alternative housing. The Defendant also understood that, although he was unemployed at the time of the crimes, he would be required to obtain appropriate employment if granted probation. The Defendant was asked by his attorney to explain one of his comments contained in the pre-sentence report: "She said I rape[d] her but I did not rape her." In response, the Defendant testified:

> Well, in rape, I thought rape [sic] when you insert your other privates inside a female. By me just trying to wake her up and touch her with my finger, I know that's the law, but in my heart I didn't think – I don't think that would be a rape charge. But going by the law, it's a rape charge. And I'm sorry I did that. And forgive – I wish she would forgive me or whatever. I'm just sorry. I'm sorry. I'm sorry I went upstairs and did this. I was just trying to wake her up. And I'm sorry.

On cross-examination, the following exchanges occurred:

Prosecutor: You did that because you wanted to have sex with her, didn't you?

Defendant: No.

Prosecutor: You don't remember telling that to the Judge and the jury at trial?

Defendant: I didn't say that. I just said I went upstairs to wake her up, and I pushed on her shoulder, and she didn't wake up. And then I turned around and put my hand down on her thigh and tried to push her and wake her up. Then my finger slipped up in her. That's all I said.

Prosecutor: So it's your testimony here at the sentencing hearing, understanding that you're under oath now as you were at the time of the trial –

Defendant: I'm telling the same thing.

Prosecutor: That you did not state that you intended on having sex with her.

Defendant: I'm saying the same thing.

Prosecutor: And understanding that you could be facing a perjury charge if it's found that you testified falsely either at trial or at these proceedings here today.

Defendant: Yeah, I have.

Prosecutor: So I'll give you another opportunity, Mr. Simmons. At trial and that night did you not intend on having sex with [the victim]?

Defendant: No.

Prosecutor: Is it not true, Mr. Simmons, that the reason you inserted your finger inside of her vagina is because you wanted to have sex with her?

Defendant: No. No, sir.

. . .

Prosecutor: So the fact of the matter is, Mr. Simmons, you don't feel like you raped [the victim], do you?

Defendant: Not in my point of view I don't, but in the law it is.

-4-

Prosecutor: So from the standpoint you don't feel like you raped her. You don't feel like you need any treatment, do you?

Defendant: If I have to go through a treatment program, I'll go through it, yes, sir.

Prosecutor: You don't feel like you need it, though, do you?

Defendant: I don't feel like I need it, but if I have to have it, I'll have it.

During trial, Detective Mike Turner testified that, although the Defendant initially denied committing the crimes, he eventually confessed and fully cooperated with the police during the investigation. Detective Turner further testified that criminal defendants normally do not initially admit their involvement in the crimes. At trial, the Defendant testified that he had no intentions of forcing the victim to have sex with him, instead he said he was trying to arouse her so she would consent to having intercourse. The Defendant admitted at trial that he "had done something wrong."

After the conclusion of the evidence at the sentencing hearing, the Defendant argued to the court that he should be placed on probation. The Defendant acknowledged that he was convicted of rape, however, he contended that the facts of his case were not as egregious as other rape cases. Referring to the sentencing statute, the Defendant argued that a sentence of confinement would be a greater sentence than deserved for the offense committed and that inequalities in sentences should be avoided. The trial court denied probation and sentenced the Defendant to the minimum sentence for each offense. While observing that rape is a serious offense, the court stated that it did not want to depreciate the seriousness of the offense and believed that a sentence of confinement would provide a deterrent effect.

## ANALYSIS

The Defendant now appeals the trial court's denial of alternative sentencing. Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).[1] To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found,

---

[1] We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. However, the Defendant's crimes in this case, as well as his sentencing, predate the effective date of these amendments. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

The principles of sentencing further reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The trial court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

Because the Defendant in this case was convicted of a Class B felony, he is not entitled to the presumption of alternative sentencing. Tenn. Code Ann. § 40-35-102(6). See also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). However, the Defendant is *eligible* for probation because his actual sentence is eight years or less and the offense for which he was sentenced is not specifically excluded by statute. See Tenn. Code Ann. § 40-35-303(a). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, a defendant bears the burden of proving his or her suitability for probation. See id. § 40-35-303(b). No criminal defendant is automatically entitled to probation as a matter of law. See id. § 40-35-303(b), Sentencing Commission Comments; State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. See id. If the court determines that a

period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See Tenn. Code Ann. §§ 40-35-303(c), -306(a).

The Defendant does not challenge the length of the sentence imposed. Rather, he argues that "[t]he principles of sentencing and the balancing process of favorable versus unfavorable factors dictate that the [Defendant] should not be sentenced to confinement" and that "[s]uitable alternatives to confinement are available that adequately protect society and provide an opportunity for [him] to rehabilitate himself." He also asserts that his lack of a prior record favorably supports consideration for probation.[2]

The Defendant is correct in stating that there must be some accompanying evidence in the record in order for a trial court's conclusive statements about the general deterrent effect of confinement to be a sufficient reason, alone, to deny probation. See State v. Hooper, 29 S.W.3d 1, 13 (Tenn. 2000) (denial of probation may be "based solely on a need for deterrence when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes"). There is no such evidence in the record at hand. However, even though the trial court mentioned the need for deterrence, the court was also particularly concerned about depreciating the seriousness of the offense. "The fact that a rape was committed in [the victim's] bedroom while she was asleep is something that should never have taken place." The Defendant contends that the nature and circumstances of his crimes are not "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." However, the trial court obviously disagreed with the Defendant's description of the nature and circumstances of the offenses in this case. In addition, our de novo review of the record convinces us that the Defendant did not fully appreciate the wrongfulness of his actions. It is readily apparent from this record that the Defendant's testimony at trial and his testimony at his sentencing hearing was inconsistent. His lack of candor with the court concerning his culpability is quite remarkable. We consider the Defendant's lack of candor in his testimony as a poor reflection on his potential for rehabilitation. State v. Bunch, 646 S.W.2d 158, 160-61 (Tenn. 1983). His testimony during the sentencing hearing, in which he denied any desire to have sex with the victim, conflicted with the statements he made during trial that he hoped to arouse the victim by touching her.

Furthermore, despite being "sorry" for his actions, the Defendant stated that he did not believe he actually committed a crime of rape and that he did not believe he needed counseling. This evidence, combined with the fact that he did not fully cooperate with the court ordered evaluation,

---

[2] As noted earlier in the opinion, the Defendant was thirty-eight years old on the date of the crimes in this case. The pre-sentence report indicates that the Defendant has one prior misdemeanor conviction for possession of marijuana. The Defendant dropped out of high school during his twelfth year and he was unemployed prior to his arrest on the charges in this case. He does not have a history of steady employment.

also demonstrates a lack of potential for rehabilitation.  See, e.g., State v. Michael R. Harness, No. E2004-01946-CCA-R3-CD, 2005 WL 2515780 (Tenn. Crim. App., Knoxville, Oct. 11, 2005) (court did not want to depreciate seriousness of the offense and denied probation finding defendant had not shown enough accountability for the offense).  The Defendant has the burden of demonstrating that probation would serve the ends of justice and the best interests of both the public and the defendant. The Defendant simply has not carried his burden of demonstrating that he is entitled to probation.

## CONCLUSION

For the reasons stated above, we conclude that the trial court did not err in denying alternative sentencing for the Defendant.  The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE